**Carrie LESTER, Plaintiff,**

**v.**

**CITY OF ROSEDALE, MISSISSIPPI; and Spencer Arbuckle, Individually and in His Official Capacity as a Police Chief of the City of Rosedale, Mississippi, Defendants.**

**Civ. A. No. DC 90–2–D–0.**

United States District Court,
N.D. Mississippi,
Delta Division.

Feb. 14, 1991.

Cleve McDowell, Drew, Miss., for plaintiff.

Gary E. Friedman, Louise Harrell, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This matter is before this court on defendants' motion for summary judgment. Plaintiff has filed suit under 42 U.S.C. § 1983 alleging violations of the first, fourth and fourteenth amendments to the United States Constitution.[1] Her complaint centers on the actions of Spencer Arbuckle, Rosedale's chief of police, on January 4, 1989, when he attempted to subdue her with mace as she grabbed and held the head of her civil opponent in Bolivar County Justice Court. The altercation was severe enough to cause County Justice Court Judge James Strait to physically intervene while a spectator shouted for help.

The defendants are the City of Rosedale, Mississippi, and Arbuckle, individually and in his official capacity as police chief.

Although the movant has raised doubts about important elements of the plaintiff's case, the court discerns two issues of material fact which prevent the court from granting summary judgment in favor of the City of Rosedale and Defendant Arbuckle in his official capacity. At the same time, the court finds that Arbuckle is protected in his individual capacity by the doctrine of qualified immunity and, therefore, grants summary judgment in favor of Arbuckle individually. The relevant facts and legal issues are set forth below.

### FACTS [2]

After a dispute with her niece, Patricia McNiel, over a bed allegedly sold to a pawn shop, the plaintiff filed conversion of property charges. Plaintiff's case was heard on January 4, 1989 at the Bolivar County Courthouse in Rosedale, Mississippi, before Bolivar County Justice Court Judge James Strait. Apparently finding insufficient evidence,[3] Judge Strait issued a ruling in favor of the defendant, McNiel. Although plaintiff disclaims that she was extremely angry after hearing the ruling,[4] she does admit that she was "upset"[5] and that she grabbed her niece by the forehead and held her back when her niece began laughing at her or saying words to the effect of, "that's the way it fell."[6]

1. Plaintiff has also requested attorneys fees under 42 U.S.C. § 1988.

2. In keeping with the requirements of Local Rule 8(d), defendants submitted a set of proposed findings of fact and conclusions of law along with their motion for summary judgment. Local Rule 8(d) requires that the respondent "shall either agree that the facts listed by the movant are undisputed or shall state with specificity those facts which are contested and the reasons therefor." Local R. 8(d). Although plaintiff failed to meet the technical requirements of the rule by not claiming with specificity which of defendants' proposed findings are in dispute, plaintiff's memorandum in opposition to defendants' motion for summary judgment argues that portions of defendants' exhibits create issues of material fact. Because of the court's desire to reach the merits of the summary judgment issue, the court will accept defendants' findings, but also will refer to plaintiff's

arguments when justice so requires. See Fed.R. Civ.P. 1; Local Rules, Preamble. Despite the latitude the court gives in this instance, in future cases, a failure to abide by the local rules may be grounds for summary judgment where failure to dispute an opponent's statement of facts eliminates all genuine issues of material fact for trial.

3. Deposition of Carrie Lester, p. 19.

4. Plaintiff stated that she felt her actions were peaceful because she didn't "hurt" anybody and that she wasn't as angry or as "loco" as "they made as though I was." Deposition of Carrie Lester, p. 63.

5. Deposition of Carrie Lester, p. 19.

6. According to plaintiff's deposition:
   A: ... anyway, when she came around—when she came around, she ... had started

When Ms. McNiel began hollering, Judge Strait rushed toward the two, caught plaintiff by the hand and attempted to separate them. According to the plaintiff's own deposition, Mr. Joe Green, a spectator in the courtroom, called for assistance by hollering, "Hey, y'all, she's murdering this girl. She's murdering this girl." Deposition of Carrie Lester, p. 28. Three people had pinned plaintiff to the wall when Arbuckle ran through the door and, after allegedly giving no warning, sprayed plaintiff in the face and eyes with mace.[7] Plaintiff argues that the direct spraying was excessive and, without estimating the length of time the mace was used, argues that "he did not have to spray ... as long as he did." Affidavit of Carrie Lester, p. 2. Plaintiff claims that she sustained serious injuries from the incident and that she underwent medical treatment.

As a result of the incident, Judge Strait cited plaintiff for contempt of court, fined her fifty dollars and sentenced her to one day in jail. Plaintiff was also arrested by the Bolivar County Sheriff and charged with committing simple assault against McNiel. She was found guilty of this charge, fined $315 and was placed on probation for two months.[8] Plaintiff filed her complaint in this court on January 2, 1990, pursuant to 42 U.S.C. § 1983 and the first, fourth and fourteenth amendments to the United States Constitution. Plaintiff's complaint asserts that Arbuckle interfered with her right to engage in argument, and therefore, her right "to free speech and to assemble peacefully." She further claims that the actions constituted an unreasonable seizure in violation of the fourth and fourteenth amendments. Finally, she alleges that the City of Rosedale, by condoning such actions and other abuses of authority,[9] has pursued a policy or practice of unconstitutional behavior, actionable under Section 1983.

## DISCUSSION

### (1) Summary Judgment Standard

A court should grant summary judgment only where no genuine issues of material fact exist and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must present adequate basis for the motion, after which the nonmoving party must counter with enough evidence to create a factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant bears the burden of establishing a genuine issue of material fact and "may not await trial or appeal" to develop responsive claims or defenses. *C.F. Dahlberg & Co. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 920 (5th Cir. 1988). Nonetheless, all facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

laughing like she had, you know, said something ... [like] ... 'That's the way it fell,' and stuff.
Q: She started laughing. Did she say anything to you?
A: She just started laughing.
Q: But she didn't say anything?
A: No, she didn't say anything.
Q: So what happened next?
A: So I just caught her head and held it back. Deposition of Carrie Lester, p. 24.

**7.** Affidavit of Carrie Lester, p. 1. Plaintiff also alleges that Arbuckle struck her, Complaint, paragraph 2, although she did not clearly confirm this when questioned during her deposition. *See* Deposition of Carrie Lester, pp. 65–66.

**8.** *See* Certified Copy of Justice Court Docket, dated January 4, 1989, attached to defendant's motion as an exhibit, and Certified Copy of Justice Court Docket, dated January 25, 1989, also attached to defendant's motion as an exhibit.

**9.** In her deposition, plaintiff testified that she knew of three other incidents in Rosedale in which Arbuckle sprayed persons with mace. She professed to recalling the name of one of the persons, but could not recall the name of the others and could not testify to more than what she had heard. Such hearsay is inadmissible for purposes of defending against a motion for summary judgment. *See Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir.1980), *reh. denied*, 642 F.2d 1210 (5th Cir. 1981), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Broadway v. Montgomery*, 530 F.2d 657, 661 (5th Cir.1976).

Emphasizing the duty of a court to draw inferences in favor of the nonmoving party, plaintiff argues that pages 18, 24, 25, 28, 33 and 34 of plaintiff's deposition "clearly indicate that there exist major issues as to what the facts of this case are." On page 18, plaintiff discusses her degree of emotional upset after the judge's decision and disputes the suggestion that she became extremely angry. On pages 24 and 25, plaintiff claims that she caught her opponent by the forehead and pulled her back and not by the hair. Page 28 recounts the "real loud" hollering of Mr. Green for help, while pages 33 and 34 recount Arbuckle's entry into the room and his alleged failure to warn.

■ Certainly plaintiff does not mean to suggest that her Section 1983 claim is stronger because she pulled her opponent by the forehead rather than by the hair or because she privately felt less angry than her actions indicated. She herself admits that Arbuckle ran in after a spectator shouted "murder" or words to that effect; that Green's shouting was loud enough to cause Arbuckle to act; and that both the Judge and two other persons had acted to restrain her. After studying these pages, the court is of the opinion that at best, only two issues of material fact remain: 1) Did Arbuckle have sufficient time to give a verbal warning? and 2) Was the direct manner and length of the spraying reasonable under the circumstances?

Of course, an issue of fact must be "genuine" to preclude summary judgment,

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and plaintiff has forwarded very little evidence to show why a reasonable juror might find for the plaintiff. Aside from plaintiff's deposition, the only evidence that exists in the record on these two issues is plaintiff's affidavit, in which she states that she fell to her knees and had to undergo medical treatment.[10] Nevertheless, the jury, and not the court, must decide whether enough time was available for a warning or whether the manner and timing of the spraying was reasonable. In asking whether a juror could find for the plaintiff, the court cannot venture into credibility determinations, weigh evidence or draw inferences from the facts. *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir.1987). Even if one view might seem more credible, drawing inferences is a job for the jury. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. Moreover, a court may deny a motion for summary judgment "where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

(2) Plaintiff's Section 1983 Claims

Having found that genuine issues of fact exist, the court must next determine whether these facts are material in light of the Section 1983 claim plaintiff forwards. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A plaintiff seeking to recover under Section 1983 must

**10.** In response to defendants' motion for summary judgment, plaintiff supplied her own affidavit which attempts to recount the events of January 4, 1989 and argues that Arbuckle sprayed her "until she almost passed out" and that she "fell to her knees because of the exposure to the mace." The affidavit also reasserts plaintiff's belief that the City of Rosedale has received complaints about Arbuckle's behavior and that the city "finally had to force him to resign." Defendant has moved to strike the affidavit first, because it contains statements directly contradictory to her deposition testimony, and second, because it is not based on personal knowledge.

As for the portions of the affidavit which are alleged to be contradictory, it is true that a nonmovant cannot defeat a summary judgment motion by submitting an affidavit which directly contradicts, without explanation, her previous testimony. *Miller v. A.H. Robins, Co.*, 766 F.2d 1102, 1104 (7th Cir.1985). However, to the extent that the information in the affidavit *adds to* the explanation of how long the mace was sprayed and the surrounding circumstances, the court will consider it.

As for defendants' contention that part of the affidavit is based on plaintiff's "beliefs," a statement based upon information and belief does not satisfy the requirements of Rule 56(e). *See Chandler v. Coughlin*, 763 F.2d 110, 113–14 (2d Cir.1985). Therefore, the court agrees that those portions of the affidavit relating to plaintiff's "beliefs" about past complaints against Arbuckle should not be considered.

first satisfy its elements. To be liable, a defendant must be a "person," acting "under color of state law" and "in violation of the Constitution or the laws of the United States." 42 U.S.C. § 1983. Essentially, defendants' motion for summary judgment argues that plaintiff has failed to meet the first and last parts of this definition.

Plaintiff has sued the city as well as Arbuckle in his official and individual capacity for violations of the first, fourth and fourteenth amendments. "For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061 (5th Cir.1987), *cert. denied, Connick v. Mairena*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988). Therefore, the court will consider the claims against the city and Arbuckle in his official capacity together and will analyze the claims against Arbuckle in his individual capacity separately.

*a) Claims Against the City of Rosedale and Defendant Arbuckle in his Official Capacity*

A city "may be liable under section 1983 only if a municipal policy caused the deprivation of a right protected by the Constitution or federal laws." *McConney v. Houston*, 863 F.2d 1180, 1184 (5th Cir.1989); *see also, Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). These cases show that a city may be a "person" under Section 1983 if the "policy" requirement is met. The Fifth Circuit has defined a policy as:

1. A policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had designated policy-making authority ...

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984), *reh'g granted in part, denied in part, en banc*, 739 F.2d 993 (5th Cir.1984). Because neither side contends that the city's use of mace was part of a constitutionally infirm written policy, it is the second part of the definition in *Webster* that takes on importance here. Much depends on the authority of the perceived wrongdoer. When the perceived wrongdoer is a mere official or employee, "[s]ufficiently numerous prior incidents of police conduct" are required to suggest accession by policymakers. *McConney*, 863 F.2d at 1184. When the perceived wrongdoer enjoys greater authority, however, an isolated incident of misconduct may be sufficient to create municipal liability if that individual has been given "policy-making authority" by virtue of the office. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) (plurality). Whether an official has final policymaking authority is a question of state law, *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923–24, 99 L.Ed.2d 107 (1988), and "one to be resolved by the trial judge *before* the case is submitted to the jury." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, ——, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598, 628 (1989) (emphasis in original). Thus, the court must initially decide whether Chief Arbuckle enjoyed policymaking authority regarding the use of mace and the maintenance of the courtroom.

The Supreme Court has stated that a policymaker is one who has the final authority to make a choice and makes a choice between several alternatives. *Pembaur*, 475 U.S. at 484, 106 S.Ct. at 1300–01. In Mississippi, "the marshal or chief of police [is] the chief law enforcement officer of the municipality ..." Miss.Code Ann. § 21-21-1 (1990). Although another code provision arguably places the authority to enact police regula-

tions in the city council,[11] the court is of the opinion that Chief Arbuckle was a "policymaker" with regard to the specific decision to use mace in the courtroom, in what manner and for how long. In this regard, the court is influenced by the decision of another circuit which has found a sheriff to be a policymaker in a Section 1983 context due in part to his "extraordinary power to ... enforce the law." *See Marchese v. Lucas,* 758 F.2d 181, 189 (6th Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987).[12]

■ Having determined that Defendant Arbuckle is a policymaker, the court must next determine the viability of plaintiff's constitutional challenges. Plaintiff claims that Arbuckle's actions interfered with her rights under the first amendment, but the first amendment does not protect violence. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 916, 102 S.Ct. 3409, 3427, 73 L.Ed.2d 1215 (1982), *reh'g denied,* 459 U.S. 898, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). Although plaintiff was free to discuss and even argue about her case outside the courtroom once the hearing was over, head- or hair-pulling, like other forms of violence, cannot "masquerade under the guise of 'advocacy.'" *See id.* 458 U.S. at 917, 102 S.Ct. at 3427–28 (quoting *Samuels v. Mackell,* 401 U.S. 66, 75, 91 S.Ct. 764, 769, 27 L.Ed.2d 688 (1971) (Douglas, J., concurring)). Therefore, plaintiff's first amendment claims must fail.

■ Plaintiff next asserts that Arbuckle's actions constituted an "unreasonable seizure" or "unreasonable force" in violation of the fourth and fourteenth amend-

ments. The Supreme Court's decision in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and the Fifth Circuit's decision in *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989), provide that an officer's behavior during the course of an "arrest, investigatory stop or other 'seizure' of [a] person" should be analyzed under a fourth amendment standard of objective "reasonableness." *Graham,* 490 U.S. at 388, 109 S.Ct. at 1867, 104 L.Ed.2d at 450.[13] Furthermore, an action rises to the level of a constitutional violation only if "significant injuries have resulted from the officer's use of *excessive* force." *Johnson,* 876 F.2d at 480. Thus, injuries which result from "an officer's justified use of force do not implicate constitutionally protected interests." *Id.* at 480. The Fifth Circuit has summarized these requirements in a three-part test, each part of which the plaintiff must overcome to prevail. These requirements are: 1) a significant injury; 2) resulting directly and only from the use of force that was clearly excessive to the need; and 3) the excessiveness must have been objectively unreasonable. *Id.* at 480.

The court agrees that plaintiff has produced enough evidence to show, at least for the purposes of overcoming summary judgment on the point, that her injuries were significant. Whether the use of the mace was "clearly excessive to the need" and "objectively unreasonable" are also questions that should be decided by the jury on these facts. As noted in the first part of this opinion, plaintiff's affidavit raises questions about the use of the mace without a warning and about the length and

**11.** Section 21–19–15 states that "The governing authorities of municipalities shall have power to make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property." Miss.Code Ann. § 21–19–15 (1990).

**12.** Defendants have not offered information that might suggest that some authority other than Chief Arbuckle exercised control over courtroom maintenance. If discretion to use mace in the courtroom was vested elsewhere, defendants are free to present this information at trial. Otherwise, the court will abide by its determina-

tion that Chief Arbuckle was a policymaker as to the manner and use of mace in the courtroom.

**13.** The Supreme Court went on to say that such excessive force claims should be analyzed under the fourth amendment rather than under the less explicit standard of 'substantive due process' contained within the due process clause of the fourteenth amendment. *Graham,* 490 U.S. at 394–95, 109 S.Ct. at 1871, 104 L.Ed.2d at 454. Accordingly, because plaintiff has based her fourth and fourteenth amendment claims on defendants' alleged use of excessive force, the court will analyze these claims under the fourth amendment "reasonableness" standard.

manner of its use. Although defendants forward cases from other courts in which the use of mace on pre-trial detainees did not create excessive or unreasonable force,[14] only one of the cited cases was before the court in a summary judgment posture. Moreover, the facts of those cases are not sufficiently similar to these in the instant case to compel a similar finding here. For all of these reasons, defendants' motion for summary judgment is denied as to the fourth amendment claims against the City of Rosedale and defendant Arbuckle in his official capacity.

### b) Claims Against Defendant Arbuckle In His Individual Capacity

■ Section 1983 allows suits against officials in their individual capacity when they violate established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Although a suit against an official in his individual capacity does not require that a plaintiff prove a policy or custom on the part of the municipality that employees him, such officials are entitled to assert the defense of qualified immunity for acts occurring in the course of their official duties. *Harlow*, 457 U.S. at 806, 102 S.Ct. at 2732; *Gagne v. Galveston*, 805 F.2d 558, 559 (5th Cir.1986); *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986). The purpose of such immunity is to ensure that officials do not hesitate to take actions reasonably calculated to advance the public good.

Because the court has already determined that plaintiff has failed to present facts sufficient to create a constitutional violation under the first amendment, plaintiff's claim against Arbuckle in his individual capacity for first amendment violations

must also fail. As for plaintiff's fourth and fourteenth amendment claims, the court finds that Arbuckle is protected under the doctrine of qualified immunity. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Jacquez*, 801 F.2d at 791 (qualified immunity shields an official from liability unless the official's conduct violates clearly established statutory or constitutional rights). A right is considered clearly established when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 530–31 (1987). Faced with McNiel's cries for help, Judge Strait's intercession and the added drama of Green calling for assistance, Arbuckle would have had reason to believe that his actions were constitutionally permissible. Accordingly, the court grants defendants' motion for summary judgment for any fourth or fourteenth amendment claims against Arbuckle in his individual capacity.

### CONCLUSION

Having determined that plaintiff has failed to present facts sufficient to create a claim under the first amendment, the court grants defendants' motion for summary judgment on any and all claims alleging violations of the first amendment. As for plaintiff's claim of excessive force under the fourth and fourteenth amendments against the City of Rosedale and Arbuckle in his official capacity, the court finds that Arbuckle, as chief of police of the city, enjoyed sufficient policymaking authority to create municipal liability on these facts.[15] Additionally, the court has determined that the proper analysis for plaintiff's excessive force claim is under the

---

**14.** *Smith v. Iron County*, 692 F.2d 685, 686–87 (10th Cir.1982) (district court's grant of summary judgment affirmed on grounds that use of mace on a pre-trial detainee in prison cell after warnings did not violate constitutional due process); *United Steelworkers of America v. Milstead*, 705 F.Supp. 1426, 1437 (D.Ariz.1988) (use of tear gas to effect arrest was not contrary to the reasonableness requirement of the fourth amendment); *Dayton v. Sapp*, 668 F.Supp. 385,

388 (D.Del.1987) (use of mace on arrestee not excessive or unreasonable force).

**15.** The court limits its holding to the facts of this case. By no means is the court purporting to suggest that police chiefs always enjoy policymaking authority. Rather, authority sufficient to create municipal liability will only occur in those rare situations when the law enforcement decision rests with the police chief and not the city council or some higher authority.

fourth amendment and its "reasonableness" standard rather than under "substantive due process" contained within the fourteenth amendment. Accordingly, plaintiff will be allowed to proceed to trial on her fourth amendment claim because of genuine issues of material fact which exist on the reasonableness of using the mace without a warning and the reasonableness of the length and manner of its use. At trial, plaintiff will be required to prove that her case meets the three-part test outlined in *Johnson,* 876 F.2d at 480.

As for plaintiff's claims against Arbuckle in his individual capacity, the court finds that Arbuckle is protected by the doctrine of qualified immunity. Therefore, defendants' motion for summary judgment is granted as to any and all claims against Arbuckle in his individual capacity.

An order consistent with this opinion shall issue.