**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-10610

ESTATE OF SHANE G. SORRELLS, Etc.; Et al.,                Plaintiffs,

ESTATE OF SHANE G. SORRELLS,
by and through its independent executrix
Sheryl Thostenson; DANA FONTENOT, as
next friend of Chandler Sorrells, a Minor;
PAT SORRELLS; RITA SORRELLS,                Plaintiffs-Appellees-Appellants,

versus

CITY OF DALLAS; Et al.,                Defendants,

CITY OF DALLAS,                Defendant-Appellee,

JOSEPH CUTRONA, Officer;
WILLIAM READDY, Officer;
STANLEY GRIFFIS, Sergeant,                Defendants-Appellants-Appellees.

Appeals from the United States District Court
for the Northern District of Texas

July 10, 2002

1

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Joseph Cutrona ("Cutrona"), William Readdy ("Readdy"), and Stanley Griffis ("Griffis") (collectively, the "Officers") appeal from the district court's denial of qualified and official immunity from the plaintiffs' § 1983 and state law claims. The Estate of Shane G. Sorrells and various statutory heirs of Shane G. Sorrells (collectively, the "Sorrells Family") cross-appeal from the grant of summary judgment in favor of the City of Dallas ("Dallas"). For the reasons set forth below, we AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

In the Fall of 1998, Officers Cutrona and Readdy were dispatched to an apartment complex to investigate a report of indecent exposure. Upon their arrival, they witnessed Shane G. Sorrells ("Sorrells"), nude and masturbating in the front seat of his car. Cutrona and Readdy told the suspect to get out of his locked car, he failed to respond. The officers then called for backup. According to the Sorrells Family, Sorrells did not exhibit any violent behavior or attempt to flee. Nevertheless, Cutrona and Readdy decided to use Oleoresin Capsicum ("OC") spray[1] to force Sorrells out of his vehicle. Sorrells continued to masturbate and remained in his vehicle. Around this time, Sergeant Griffis arrived. Griffis used an ASP baton to break the passenger-side window of the car. Sorrells was injured by pieces of flying glass and began to bleed. Cutrona and Griffis then used more OC

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] OC spray, also known as pepper spray or pepper mace, is a chemical agent made from hot pepper extracts. The active ingredient, capsicum, is an inflammatory agent. Exposure to OC Spray irritates the mucous membranes of the eyes, nose, throat, and lungs. It also causes dilation of the capillaries, which inhibits the ability to breathe.

spray on Sorrells, but he refused to exit the vehicle. At this point, Cutrona unlocked the car and attempted to pull Sorrells from the vehicle. However, because Sorrells was sweating, Cutrona could not get a firm grasp on him. Cutrona and Readdy were eventually able to remove Sorrells from the car and get him to the ground. Shortly thereafter, three more officers arrived on the scene. A struggle ensued when the officers attempted to handcuff Sorrells. According to the Sorrells Family, and a civilian witness, one of the officers struck Sorrells "between 25 and 30 times" with a baton while another officer applied a Lateral Vascular Neck Restraint ("LVNR"),[2] which is used to subdue struggling individuals. Cutrona admits that he struck Sorrells twice on the right arm with a baton after he refused a verbal command to put his arm behind his back. However, Cutrona denies that he used the extent of force alleged by the Sorrells Family. Eventually, Sorrells either began to slowly walk away (according to the Sorrells Family) or to violently escape (according to the Officers). Readdy apprehended Sorrells and brought him to the ground by use of a LVNR. Cutrona, with the assistance of the newly-arrived officers, handcuffed Sorrells. At some point during this ordeal, Sorrells lost consciousness and stopped breathing. Paramedics administered CPR at the scene and transported Sorrells to Parkland Memorial Hospital. Despite efforts to revive him, he was pronounced dead upon arrival. An autopsy revealed that Sorrells suffered a crushed larynx. The coroner ruled his death a homicide.

The Sorrells Family filed suit against Dallas, the Officers, and several other individuals including certain supervisory officials and the on-scene paramedics. They alleged excessive force and failure-to-protect violations pursuant to 42 U.S.C. §§ 1983 and 1985, and various state law causes

---

[2] An LVNR is a neck restraint involving a rear head lock and compression until conscious compliance or unconsciousness. The Sorrells Family maintains that the LVNR is essentially a chokehold. The Officers deny that a chokehold was used on Sorrells.

3

of action, including violations of the Texas Tort Claims Act, assault, battery, false imprisonment, intentional infliction of emotional distress, and negligence. The defendants moved for summary judgment on all of the claims. The relevant arguments were that (1) the Officers were entitled to qualified and official immunity and (2) there was no basis for municipal liability against Dallas. The magistrate judge recommended that the motion for summary judgment be denied as to the claims of excessive force, failure-to-protect, and state law causes of action against the Officers, and be granted in favor of Dallas and the other individual defendants. The district court adopted the magistrate judge's findings and recommendation. The Officers appeal from the denial of qualified and official immunity. The Sorrells Family cross-appeals from the grant of summary judgment in favor of Dallas.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo*. Price v. Roark, 256 F.3d 364, 368 (5th Cir. 2001). A denial of a motion for summary judgment based on a claim of qualified immunity is also reviewed *de novo*. Blackwell v. Barton, 134 F.3d 298, 301 (5th Cir. 1994). The issue of whether a right is clearly established is typically treated as a question of law. Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990). Likewise, the question of the objective reasonableness of the Officers' conduct is also a question of law. Mangieri v. Clifton, 29 F.3d 1012, 1015-16 (5th Cir. 1994). Questions of law are reviewed *de novo*. United States v. Urias-Escobar, 281 F.3d 165, 166 (5th Cir. 2002). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## DISCUSSION

4

There are three main issues on appeal. First, whether the district court erred in failing to grant the Officers qualified immunity from the excessive force and failure to protect claims under § 1983. Second, whether the Officers are entitled to official immunity on the state law claims. Finally, whether the district court erred in granting summary judgment to Dallas based on its finding that no city policy or custom caused Sorrells's injury.

## I.    Qualified Immunity

To determine whether a government official is entitled to qualified immunity from liability under 42 U.S.C. § 1983, a two step analysis is undertaken. Hayter v. Mt. Vernon, 154 F.3d 269, 274 (5th Cir. 1998). The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right. Hare v. City of Corinth, Miss., 135 F.3d 320, 325 (5th Cir. 1998). "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." Id. at 326 (emphasis in original).

Excessive force claims are analyzed under the rubric of the Fourth Amendment. Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989). At the time of the incident, a plaintiff wishing to establish an excessive force claim had to show that: (1) he suffered a significant injury, (2) resulting directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. Id. at 480. A court must view the totality of circumstances from the standpoint of a reasonable officer on the scene, paying particular attention to "whether the suspect pose[d] an immediate threat to the safety of the officers or others." Stroik v. Ponseti, 35 F.3d 155, 158 (5th Cir. 1994).

5

The failure to protect a suspect from the use of excessive force by others can give rise to liability under § 1983. Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).

The district court correctly concluded that a genuine issue of material fact existed as to whether the Officers used excessive force and failed to protect Sorrells from the use of excessive force by their comrades. The Sorrells Family adduced considerable evidence controverting the Officers' version of the events. Specifically, there is evidence in the record supporting the view that Sorrells was not a threat to anyone. First, Police Detective Joe Decorte admitted this fact to members of the Sorrells Family. Further, civilian witnesses testified that the Officers continued to kick and hit Sorrells after he was immobilized and that Sorrells did not resist or fight back. These witnesses further explained that Sorrells was repeatedly struck despite the fact that he was not struggling or fighting. Moreover, there is civilian witness testimony in the record verifying that Sorrells merely stumbled off, and did not try to flee, negating the notion that force was needed to limit the risk of flight. This witness also testified that Readdy leapt onto Sorrell's back and was choking him as Sorrells "tiptoed" away. While the Officers vigorously dispute the account of the incident as portrayed by the civilian witnesses and the Sorrells Family, the district court correctly concluded that there are too many disputed facts regarding the amount of force used, and the necessity of the escalating violence, to permit resolution of this case by way of summary judgment. Moreover, the same facts that give rise to a genuine issue of material fact as to whether the Officers used excessive force, give rise to a genuine issue of material fact as to whether the Officers failed to protect Sorrells.

## II.     Immunity from the State Law Claims

The Officers assert two separate grounds of immunity from the Sorrells Family's state law

6

claims.

A.    Official Immunity

"Texas' law of qualified or official immunity is substantially the same as federal immunity law." Cantu v. Rocha, 77 F.3d 795, 809 (5th Cir. 1996) (citing City of Lancaster v. Chambers, 883 S.W.2d 650, 656 (Tex. 1994)). "There is, however, one important difference. Summary judgment is not appropriate, as it is in the federal system, simply on a showing that the right alleged to have been violated was not clearly established." Id. at 808-09 (citing City of Lancaster, 833 S.W.2d at 657). Texas's test for official immunity focuses solely on the objective legal reasonableness of the officer's conduct. Id. (citing City of Lancaster, 833 S.W.2d at 656-57).

We agree with the district court that the same fact issues that preclude summary judgment on the § 1983 claim, preclude granting official immunity on the state law claims.

B.    Immunity Under Section 101.106 of the Texas Civil Practice and Remedies Code

The Officers also assert that they are entitled to immunity based on section 101.106 of the Texas Civil Practice and Remedies Code. That section provides that "[a] judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." TEX. CIV. PRACTICE MANAGEMENT. & REM. CODE ANN. § 101.106 (Vernon 1997). The Texas Supreme Court has held that the immunity conveyed to a governmental unit's employees by section 101.106 is triggered by any judgment *in a Texas Tort Claim suit* against a governmental unit. Newman v. Oberstellar, 960 S.W.2d 621, 622-23 (Tex. 1997) (emphasis added). The cause of action against the employee need not arise under the Texas Tort Claims Act ("TTCA"). White v. Annis, 864 S.W.2d 127, 131 (Tex. App. 1993) ("If the Legislature had intended for a judgment in a Tort

7

Claims Act case to bar only actions against the employee based on the same cause of action, it would have written the statute to so provide."). The "same subject matter" language in section 101.106 means "arising out of the same actions, transactions, or occurrences." Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 344 (Tex. 1998).

The Sorrells Family's state law claims against Dallas were not claims "under this chapter," i.e., the TTCA, because Dallas was only sued under § 1983. Bell v. Love, 923 S.W.2d 229, 231 (Tex. App. 1996) (recognizing that section 101.106 would only apply if the claims against the governmental unit were under the TTCA); see also Thomas v. Oldham, 895 S.W.2d 352, 355, 357 (Tex. 1995) (referring to "this chapter" as the TTCA). Because the judgment in favor of Dallas was based on § 1983, Texas's tort immunity does not apply.

### III.    Municipal Liability

"A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984). An official policy is defined as (1) "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority" or (2) "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Id. With regard to the second type of official policy, "actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." Id.

When the challenged conduct relates to informal policies or a custom of behavior, a single

8

violation is not actionable. City of Okla. v. Tuttle, 471 U.S. 808, 821 (1985) ("To impose liability [because of a single incident] would be to impose [liability] simply because the municipality hired one 'bad apple.'"). A plaintiff must establish "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread." Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

The Sorrells Family argues that the district court improperly granted summary judgment in favor of Dallas. They maintain that the policymaker for the City of Dallas is the Chief of Police. They assert that in this case, Chief of Police Bolton ("Bolton"), following an Internal Affairs investigation, exonerated all of the Officers, with the exception of Griffis. Therefore, they conclude that Bolton made a determination, as Dallas's policymaker, that the Officers acted within Dallas's formal written policies and procedures. They argue that either this proves that Dallas has a policy allowing for the use of excessive force or, alternatively, that this proves that Dallas's policymaker ratified the Officers' conduct. From this, they conclude that liability can be imposed on Dallas.

As the district court noted, however, this argument obscures the fact that the incident was single and isolated and that no policy causing Sorrell's injury has been shown. In fact, if anything, the Sorrells Family put forth evidence that Dallas has formal written policies designed to protect arrestees in these types of situations. Were we to hold Dallas liable in such a situation, we would be holding the city liable not for what its policy says, but for what Bolton interpreted that policy to require in a single-isolated incident. See Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding that *respondeat superior* liability is unavailable in § 1983 suits). As such, the district court properly granted summary judgment in favor of Dallas on this claim.

9

## CONCLUSION

For the reasons set forth above, we AFFIRM.

AFFIRMED.