**Chesley LEWIS, Jr.**

**v.**

**Melvin GOODIE, et al.**

**Civ. A. No. 89–1350.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

July 16, 1992.

Susan Severance, Lafayette, La., for Chesley Lewis, Jr.

Michael Harris, Breaux Bridge, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TYNES, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff, Chesley Lewis, Jr., filed suit on June 12, 1989 against Breaux Bridge Police Officers Melvin Goodie [1] and Anthony DeRousselle, and the City of Breaux Bridge alleging causes of action under 42 U.S.C. Section 1983 and Louisiana law. On July 24, 1991, plaintiff filed an amended petition naming George Menard, the Chief of Police of the City of Breaux Bridge, as an additional defendant in both his individual and official capacity. Plaintiff claims that the defendants violated his constitutional rights and specifically avers unlawful arrest, use of excessive force, failure to intervene, failure to provide medical care, and various policies and customs of the City of Breaux Bridge which establish a failure to provide adequate training, supervision and/or discipline of its' police officers. He seeks compensatory and punitive damages, and attorney's fees under 42 U.S.C. Section 1988. Based upon the consent of the parties pursuant to 28 U.S.C. Section 636(c)(1), trial was conducted before the undersigned Magistrate Judge on August 21, 1991. Following submission of post-trial memoranda, the matter was taken under advisement on September 18, 1991.

### II. FINDINGS OF FACT

*Pertinent Events*

During the evening hours of June 8, 1988, the Breaux Bridge Police Department received a phone call from an unidentified individual who reported that Chesley Lewis, Jr. and others were knocking over trash cans in the streets of Breaux Bridge. No written complaint was ever filed regarding the charges, nor was any record of the call maintained by the police department. The log for the evening was reported as lost.

Officer Melvin Goodie who had been employed as a patrolman for the Breaux Bridge Police Department since November 1985, was on duty that evening, along with Sergeant Ezebe Chevalier and Anthony DeRousselle. Anthony DeRousselle had been hired about March 28, 1988 and was working as a dispatcher on June 8 and 9, 1988 as he had not yet commenced the training program at the Acadiana Law Enforcement Training Academy (ALETA), completion of which was a prerequisite to promotion to the position of patrolman. Nevertheless, Sergeant Chevalier remained at the station, and Anthony DeRousselle assisted Melvin Goodie in responding to the call. They patrolled the streets and observed a group of young people, including the plaintiff, walking in the vicinity near the toppled trash cans, but they did not observe anyone turning over cans. Nor did they stop and question anyone, or seek a warrant.

Instead, sometime later they proceeded to the residence of Chesley Lewis, Jr. at 806 Cecile Boulevard in Breaux Bridge, Louisiana arriving at approximately 4:00 a.m. There they found Chesley Lewis, Jr., Chesley Lewis, Sr. and Calvin Pete standing and talking in the front yard of the residence. Officer Goodie and Dispatcher DeRousselle advised Chesley Lewis, Jr. and Calvin Pete that they were under arrest, but failed to advise them of the nature of the charges or their constitutional rights as required by *Miranda*. Despite the policy of the Breaux Bridge Police Department to handcuff arrestees,[2] Lewis, Jr. and Pete were not handcuffed. Chesley Lewis, Jr. became angry and demanded to know the reason for the arrest, at which point his father encouraged him to go with the officers assuring him that he would come to the station and post bond. Dispatcher DeRousselle escorted Calvin Pete to the left back seat of the patrol car and Officer Goodie escorted Chesley Lewis, Jr. to the right back seat. While Lewis, Jr. was entering the vehicle, Officer Goodie intention-

---

**1.** The Estate of Melvin Goodie was substituted during the pendency of this suit.

**2.** Exhibit P–7, Policy and Procedure Manual, Section B—Standard Operating Procedures, No. 10.

ally slammed the door on his lower right leg.

During the ride to the police station, hostile words were exchanged between Lewis and Officer Goodie, said exchange having been provoked by Officer Goodie's slamming the door on Lewis' leg. Upon exiting the vehicle, Lewis lunged toward Officer Goodie. Goodie responded by punching Lewis numerous times in the face with his right fist. He continued to beat Lewis even after he had been successfully subdued. Lewis is approximately 5' 8" and weighed about 140 pounds at the time, as compared to Officer Goodie's 6' 4", 230 pounds. During this beating, Lewis' head hit and dented the patrol vehicle, and Officer Goodie lost his watch and the gold nugget ring which he wore on his right hand. Goodie continued to beat Lewis, even as Lewis was falling to the ground. The only injuries sustained by Officer Goodie were scratches on his arms and face inflicted by Lewis' attempts to protect himself from the blows inflicted by Officer Goodie.

*Failure to Intervene*

Officer DeRousselle did not see the altercation in the parking lot commence, but did eventually intervene to stop the beating. Thereafter, Goodie and DeRousselle carried Lewis inside the police station to the interrogation room. Once inside Lewis became verbally abusive again. Instead of handcuffing him, Officer Goodie proceeded to beat him again. Anthony DeRousselle witnessed the beating in the interrogation room, but this time he failed to intervene in any way.

*Lewis' Injuries, Medical Expenses and Lost Wages*

As a result of the beatings, Lewis sustained a laceration to the left cheek imme-diately below the eye, two knots or contusions to the forehead, and a swollen jaw which limited his ability to eat for a week.[3] He also sustained a lumbar strain of approximately one and one-half years duration,[4] a cervical strain of approximately one month's duration,[5] temporary headaches and blurred vision and a severe contusion and swelling of the right leg approximately 5 inches below the knee which caused him to limp for several weeks.[6] At trial, a firm prominence or scar remained on plaintiff's left cheek at the site of the laceration inflicted by Officer Goodie's ring. Plaintiff was unable to mow yards, his only source of income at the time of the incident, for approximately 3 weeks.[7] He had previously been earning approximately $60.00 per week mowing yards.[8] Plaintiff incurred medical expenses in the sum of $450.00 for injuries related to the Goodie incident through 7/14/89.[9] Plaintiff incurred further medical expenses in the total sum of $120.00 between August and November of 1989; however, one-half of these expenses were related to an automobile accident which occurred subsequent to the Goodie incident.[10] Thus, only $60.00 are attributable to the Goodie incident. Total relevant medical expenses equal $510.00. Chesley Lewis, Jr. also suffered mental anguish and embarrassment as a result of defendant's actions.

*Medical Care*

Following the beatings, the facial laceration bled profusely. Approximately two hours later, an ambulance was summoned to transport Lewis for medical treatment. Because the bleeding had ceased and Lewis did not have funds to pay for the treatment, he requested and the ambulance driver terminated the transport and returned

3. Facial injuries depicted in Exhibit P–10.

4. Dr. John Humphries deposition testimony, Exhibit P–6, pp. 29–31.

5. Lewis Jr.'s testimony, Transcript p. 179, lines 18–20.

6. Lewis Jr.'s testimony, Transcript p. 180, lines 13–18.

7. Lewis Jr.'s testimony, Transcript p. 200, lines 5–9.

8. Lewis Jr.'s testimony, Transcript p. 189, lines 2–3.

9. Exhibit P–11—medical bills.

10. Exhibit P–12—medical bills.

him to police custody prior to arrival at the hospital.[11]

*Disposition of Charges*

About 4:00 p.m. on June 9, 1988, the plaintiff was released after his mother signed as surety to an appearance bond. The Breaux Bridge City Court records[12] contain a signed "rights form" which indicates that Lewis was finally advised of his constitutional rights at the time of release. Thereafter, despite Nicole Jones' statement to the police that Lewis had not participated in turning over trash cans, and the complete absence of inculpatory eye-witnesses, Lewis was prosecuted for criminal mischief, battery of a police officer, criminal damage to property (police vehicle) and resisting an officer. Chesley Lewis, Jr. appeared and pled guilty to all of the pending charges in July or August 1988. He was sentenced to a suspended jail term, a probation term, various fines and restitution. Lewis pled guilty in order to avoid confinement. Although Calvin Pete and Nicole Jones were arrested, they were never prosecuted on the criminal mischief charges.

*Legal Obligations of Chief of Police of Breaux Bridge*

The City of Breaux Bridge is a municipality organized under the Lawrason Act, La. R.S. 33:321 *et seq.* Breaux Bridge Ordinance No. 1074, which sets forth police department regulations was adopted August 25, 1981 and became effective September 12, 1981.[13] A Policy and Procedure Manual for the Breaux Bridge City Police Department was adopted on March 1, 1983 as a supplement to Ordinance No. 1074.[14] The responsibilities of the chief of police are set forth at page 2, Section A of the Policy and Procedure Manual. Pertinent responsibilities of the chief of police include the following:

"a. Maintaining a fully staffed and adequately trained police department.

b. Maintaining a work schedule for all police department personnel.

c. *Attending all regularly scheduled meetings of the mayor and board of aldermen.*

d. *Adequate control and supervision over police department personnel so as to maintain the highest quality of professionalism and so as to deter any and all personnel problems.*

e. *Informing the mayor and board of aldermen of any and all police department needs and/or requirements.*

f. All other duties necessary and required with the responsibility of a chief of police." (emphasis added)

The Policy and Procedure Manual further provides at Section A, page 4, that "all personnel will be required to take the psychological profile examination, the only exception to this requirement being the elected chief of police."[15]

Paragraph 9, Section F of the Policy and Procedure Manual encourages supervision of police operations and acknowledges that "[p]roper supervision is essential to maintain a professional level of competence in law enforcement operations."

La.R.S. 33:423 defines the duties of a marshal, *i.e.* chief of police, as follows:

"The marshal shall be the chief of police and shall be ex officio a constable. He shall have general responsibility for law enforcement in the municipality, and *shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws.* He shall perform all other duties required of him by ordinance ... he shall make recommendations to the mayor and board of aldermen for appointment of police personnel." (emphasis added)

---

11. The testimony did not clearly establish the policy of the Breaux Bridge Police Department regarding payment for medical care for arrestees.

12. Exhibit P–5.

13. Exhibit P–8—Ordinance 1074.

14. Exhibit P–7—Policy and Procedure Manual.

15. No. 1 of Qualifications, Section A, Policy and Procedure Manual.

*Evidence Re Liability of Chief Menard and the City of Breaux Bridge*

The evidence established that Chief of Police Menard does not give the psychological profile test required by the procedure manual to prospective employees of the Breaux Bridge Police Department, that he does not keep a record of the complaints and/or lawsuits filed against Breaux Bridge police officers, that he does not attend meetings of the mayor and board of aldermen as required by the procedure manual[16], that there are no training programs whatsoever in effect at the Breaux Bridge Police Department beyond the initial ALETA training, that Chief Menard has never read the Policy and Procedures Manual which defines the structure of the Breaux Bridge Police Department and his obligations as police chief, in its' entirety, that there is no discussion at police department staff meetings of changing legal standards and any discrepancies being committed as required by the procedure manual,[17] and finally, that there is no police review board operating in the City of Breaux Bridge to review complaints against police officers as required by the procedure manual. Instead, a custom has developed whereby Chief Menard selectively refers complaints against officers to the St. Martin Parish Sheriffs Department for investigation, who thereafter report and recommend appropriate punishment or discipline to the mayor and board of alderman. Some complaints are, however, not investigated at all, *e.g.* the Frederick complaint against Officer DeRousselle.[18]

The obligation to develop procedures to implement the requirements set out in Ordinance 1074 was assigned to the Police Chief, the Police Commissioners and City Manager.[19]

Evidence was also adduced establishing that Breaux Bridge Police Officers Roger Istre and Melvin Goodie were involved in sexual misconduct toward minor black arrestees, *e.g.* requiring a minor black male arrestee to drop his pants, and taking photographs of the breasts of a minor black female arrestee, and that both were terminated as a result of this misconduct in 1989. Further, judicial notice was taken of two other civil rights suits pending in the Western District of Louisiana against Breaux Bridge Police Officers including *Grossie v. Sam*, Civil Action No. 87–2173, which action is still pending and involves allegations of Sidney Grossie that on or about September 30, 1986, Officer Henry Charles Sam violated his constitutional rights by arresting and beating him, and *Pritchard v. Goodie*, Civil Action No. 88–2295, in which case judgment was entered by District Judge Richard Haik in March 1992 against Melvin Goodie assessing personal, but no municipal liability as Pritchard was off duty at the time of the pertinent events.

Finally, the testimony of Officer Anthony DeRousselle indicated that Officer Melvin Goodie typically used aggression to subdue arrestees.[20]

### III. CONCLUSIONS OF LAW

1. Federal question jurisdiction exists under 28 U.S.C. Sections 1331 and 1343. Pendent jurisdiction over the state law claims exists because all claims averred arise from a "common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

2. The starting point for determining the liability of Officers Melvin Goodie, Anthony DeRousselle and Chief of Police George Menard is consideration of what the Supreme Court has termed the "two essential elements" of a 1983 action: whether the conduct complained of (1) "was committed by a person acting under

16. The mayor and board of alderman were frequently referred to as the city council at trial. For purposes of this opinion, I note that both denominations refer to the same entity.

17. Exhibit P–7, Section B—Standard Operating Procedure, No. 39.

18. DeRousselle's testimony, p. 80, lines 10–16.

19. Exhibit P–8, Ordinance 1074, Section VII—Procedures, p. 6.

20. DeRousselle's testimony, p. 81, lines 9–16.

color of state law" and (2) "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The first element has been admitted by the defendants in this litigation.[21] The second element, *i.e.* whether plaintiff's constitutional rights were violated by the actions or omissions of the defendants, is addressed in the following conclusions.

■ 3. To prevail on a Section 1983 false arrest claim, plaintiff must prove the arresting officer lacked probable cause. *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir.1991). Chesley Lewis, Jr. was arrested in the front yard of his residence on June 8, 1988, despite the lack of probable cause for his arrest. "A police officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Duckett v. The City of Cedar Park, Texas*, 950 F.2d 272, 278 (5th Cir.1991). Neither Officer Goodie nor DeRousselle witnessed the plaintiff committing any offense, and the limited investigation conducted yielded only Nicole Jones' statement that Lewis did not participate in turning over trash cans. The anonymous phone call received by the Breaux Bridge Police Department was insufficient to establish probable cause for Chesley Lewis, Jr.'s arrest absent other corroborative or supporting evidence. The Fifth Circuit recognizes a cause of action under 1983 where an individual establishes an arrest without probable cause because such an arrest implicates the constitutional guarantees of the Fourth and Fourteenth Amendments. *Sanders v. English, et al*, 950 F.2d 1152, 1159 (5th Cir.1992). There-

fore, Officers Melvin Goodie and Anthony DeRousselle are liable in their individual and official capacities to the plaintiff for compensatory damages on the false arrest claim.

■ 4. Under the circumstances of this case, Chesley Lewis, Jr.'s guilty plea to the offenses charged does not constitute proof that probable cause existed for his arrest. *Hinshaw v. Doffer*, 785 F.2d 1260, 1267 (5th Cir.1986).

■ 5. The facts fail to establish a constitutional violation with respect to the medical care claim.

■ 6. A plaintiff may prevail on a constitutional excessive force claim only by proving each of the following three elements: (1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989).[22] The use of excessive force violates an individual's liberty interest in being free of an excessive use of force contrary to the Fourth Amendment. *Id.* at 479. The plaintiff established all three elements required by *Johnson*. First, in *Hay v. City of Irving*, 893 F.2d 796, 798 (1990), the Fifth Circuit held that a bruised thigh and a sore jaw were sufficient to establish a significant injury under *Johnson*. A fortiori, I find that Lewis' injuries constitute significant injuries. Second, Officer Goodie's use of force was clearly excessive to the need as he continued to beat Lewis even after Lewis had been subdued and was falling to the ground. And the testimony of Lewis and Dr. Humphries established that the injuries claimed by the plaintiff resulted directly from the beatings inflicted by Officer Goodie. Third, the degree of force was objectively unreasonable on two grounds: (1) Goodie continued to beat Lewis after he was subdued and (2) the altercations in the

---

21. See paragraph 16 of plaintiffs' Amended and Supplemental Petition, Official Document No. 29, and paragraph 16 of defendants' Answer to Amended and Supplemental Petition, Official Document No. 30.

22. The excessive force claim is correctly analyzed under the *Johnson* standard, despite the fact that *Johnson* was issued subsequent to the events at issue. See *Mouille v. City of Live Oak*, 918 F.2d 548, 553 (5th Cir.1990).

parking lot and in the interrogation room could have been avoided entirely by handcuffing Lewis. Accordingly, Officer Melvin Goodie is liable in his individual and official capacity to the plaintiff for compensatory damages on the use of excessive force claim.

7. Police officers have an affirmative duty to enforce the law, and are obliged to prevent fellow officers from violating a citizen's constitutional rights. Where an officer fails to do so, the observing officer is jointly liable to the victim. *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir. 1983); *Thomas v. Frederick*, 766 F.Supp. 540 (W.D.La.1991). Officer DeRousselle failed to intervene in any way when he witnessed the beating which occurred in the interrogation room. Officer Anthony DeRousselle is jointly liable in his individual and official capacity with Officer Melvin Goodie on the excessive use of force claim.

8. The affirmative defense of qualified immunity was not raised by the defendants in their pleadings, memoranda or at trial, and was, accordingly, waived. Nevertheless, I note the Supreme Court's announcement in *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), that the question of whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law. 483 U.S. at 639, 107 S.Ct. at 3038. Thus, if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity only if the conduct was objectively reasonable. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990). Because no reasonable police officer could conclude that actions such as Goodie's and omissions such as DeRousselle's did not violate Lewis' Fourth Amendment right to be free from excessive force, Goodie and DeRousselle would not have been shielded by the qualified immunity doctrine in any event.

9. A supervisory official, such as Chief Menard, may not be held liable under a respondeat superior or vicarious liability theory alone. *Reimer v. Smith*, 663 F.2d 1316 (5th Cir.1981). To be liable under Section 1983, a chief of police must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the police chief and the constitutional violation sought to be addressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983). Moreover, the Fifth Circuit has repeatedly held that supervisors, including police chiefs, may face liability under Section 1983 where they breach duties imposed by state or local law, and as a result thereof, the complained of constitutional tort occurs. *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985), and cases cited therein. Further, in *Hinshaw v. Doffer*, the Fifth Circuit reminded us that one method of recovering under the failure to supervise or train rationale is to show that the police chief failed to control an officer's known propensity for the improper use of force. 785 F.2d at 1263.

I find that Police Chief Menard breached numerous duties imposed upon him by local Ordinance 1074, as delineated in the findings of fact *supra*. Breach of the duties imposed by Ordinance 1074 compounded by Officer Goodie's reputation for utilizing aggression, rather than alternative measures, to subdue arrestees, and the various complaints and lawsuits against Breaux Bridge police officers set out in the findings of fact, lead to the inexorable conclusion that (1) Chief Menard failed to supervise, train and discipline officers sufficiently to avoid violations of the constitutional rights of the citizens of Breaux Bridge; (2) that there is a causal connection between his failure and the violations of the plaintiff's rights; and (3) the failure amounted to deliberate indifference to the need for further supervision, training and discipline. I find Chief of Police George Menard liable in his individual and official capacity for all violations of plaintiff's constitutional rights.

10. A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitutional or federal

laws where it has been inflicted pursuant to official custom or policy. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Fields v. City of South Houston*, 922 F.2d 1183, 1191 (5th Cir.1991). Under Ordinance 1074 and the Policy and Procedure Manual, the final policy making authority in Breaux Bridge rests with the mayor and board of alderman, or city council. The fact that the Policy and Procedure Manual requires the chief of police to report to them regarding police department matters precludes a finding that the City of Breaux Bridge had delegated final policy making authority entirely to Chief of Police George Menard. See *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984), re discussion of municipal liability and delegation of policy making authority. I find no legal basis for city liability under Section 1983 in this case.[23]

 11. However, Louisiana law does impose vicarious liability upon a municipality for the excessive use of force by a police officer in effecting an arrest. *Braud v. Painter*, 730 F.Supp. 1, 9 (M.D.La.1990); La.C.C.Art. 2320; *Taylor v. City of Baton Rouge*, 233 So.2d 325 (La. App. 1st Cir.1970); see also, *Lamkin v. Brooks*, 498 So.2d 1068 (La.1986); *LeBrane v. Lewis*, 292 So.2d 216 (La.1974); *Applewhite v. City of Baton Rouge*, 380 So.2d 119 (La.App. 1st Cir.1979). The City of Breaux Bridge, as employer of Menard, Goodie and DeRousselle, is liable in solido for the plaintiff's injuries.

 12. Compensatory damages are awarded in favor of Chesley Lewis, Jr. against Officer Melvin Goodie, Officer Anthony DeRousselle, Chief of Police George Menard, and the City of Breaux Bridge jointly and in solido in the sums of $690.00 in special damages, including $510.00 in medicals and $180.00 in lost wages, and

$25,000.00 in general damages. The lump sum general damage award includes the full amount due for physical and emotional or mental injuries, past and future.

 13. Punitive damages are available to remedy intentional or reckless violations of civil rights. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). More specifically, such damages are warranted "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* 461 U.S. at 57, 103 S.Ct. at 1640. Thus, the object of the remedy is to punish as well as to deter the commission of similar offenses in the future. *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir.1985). I find that Officer Goodie's and Chief Menard's actions and omissions involved reckless or callous indifference to the federally protected rights of the citizens of Breaux Bridge, but that Officer DeRousselle's failure to intervene did not rise to the same level due to his untrained status at the time of these events. Punitive damages are awarded against Chief of Police George Menard and Officer Melvin Goodie in their individual and official capacities to the plaintiff in the sum of $5,000.00 against each of them. The City of Breaux Bridge has immunity from punitive damage awards under federal law. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Nor does state law authorize an award of punitive damages under the circumstances of this case.

 14. Plaintiff is awarded attorney's fees under 42 U.S.C. Section 1988 as the prevailing party against Officer Melvin Goodie, Officer Anthony DeRousselle and Chief of Police George Menard jointly and in solido, in an amount to be determined by post trial proceedings.

---

**23.** Nevertheless, the city council may not continue indefinitely to avoid liability under Section 1983 if the police, "in exercising their discretion, so often violate constitutional rights that the need for further training" becomes "plainly obvious." *Canton v. Harris*, 489 U.S. 378, 390, fn. 10, 109 S.Ct. 1197, 1205 fn. 10, 103

L.Ed.2d 412, 427 fn. 10 (1989). Under such circumstances, the failure to improve procedures and provide proper supervision, training and discipline may be said to represent a policy for which the city will become responsible under Section 1983.

15. Finally, plaintiff is awarded post judgment interest pursuant to 28 U.S.C. Section 1961 and all costs authorized by 28 U.S.C. Section 1920.